**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

YOOJIN CHUNG, on behalf of herself and all
others similarly situated,

                          Plaintiff,

       -against-

EVERGREEN HOMECARE SERVICE OF NY
INC. *d/b/a* SR HOMECARE OF NY, SR
HOMECARE OF NY, INC. *a/k/a* SR
HOMECARE AGENCY OF NY, INC., ELIM
HOME CARE AGENCY, LLC, HYUNG JONG
KOO *a/k/a* TOMMY KOO, JAMES KOO,
SEUNG RYUN CHOI, and HYE RAN KIM,

                         Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION**
**COMPLAINT**

Plaintiff Yoojin Chung ("Plaintiff" or "Chung"), by her attorneys, Hur, Lash & Choe,

LLP, brings this action, individually and on behalf of all others similarly situated, upon personal

knowledge as to herself and upon information and belief as to other matters, and alleges as

follows:

## NATURE OF ACTION

1.      This lawsuit seeks to recover overtime and other compensation, as well as

statutory penalties, for Plaintiff and her similarly situated co-workers and other non-exempt

employees (collectively, the "Non-Exempt Workers") who work or have worked at Evergreen

Homecare Service of NY Inc. *d/b/a* SR Homecare of NY with its principle office located at 37-

10 149th Place, Flushing, New York 11354 ("Evergreen"); SR Homecare of NY, Inc. *a/k/a* SR

Homecare Agency of NY, Inc. with its principal office located at 37-10 149th Place, Flushing,

New York 11354 ("SR Homecare"); and Elim Home Care Agency, LLC with its principle office

located at 41-31 163rd Street, Flushing, New York 11358 ("Elim") (collectively, "Evergreen Centers").

2.      Evergreen Centers is owned and operated by Hyung Jong Koo *a/k/a* Tommy Koo and James Koo ("the Koos"), together with Seung Ryun Choi, Hye Ran Kim and Mi Jung Kim (collectively, the "Individual Defendants", and collectively with Evergreen Centers, "Defendants").

3.      Defendants are engaged in providing senior and adult home health care services and other services to individuals in need of medical or other assistance.

4.      Plaintiff and the Class members are health and personal care aides and other current and former non-exempt employees of Evergreen Centers.

5.      Despite operating under at least three separate corporate names, Defendants have been part of a single integrated enterprise, providing joint services, that have jointly employed the Non-Exempt Workers.

6.      This enterprise is centrally controlled by the Individual Defendants, who own, manage, and/or oversee the operations, policies, and practices of all of Evergreen Centers entities, including hiring and firing of employees, supervision and controlling of work schedule or conditions of employment, determination of employees' rate and method of wage payments, and maintenance of employment records.

7.      Defendants coordinated with one and other so that the Non-Exempt Workers perform the same basic job duties, are subject to the same employment policies, practices and procedures, and are directed and/or permitted by Defendants to perform work for Defendants' agencies as part of an interrelated network of home-based health care services.

8.      Significantly, a lawsuit was filed against the same Defendants (except Evergreen, Seung Ryung Choi, and Mi Jung Kim), on or about January 14, 2019, alleging claims substantially similar to those set forth in this Complaint, but the Defendants willfully and knowingly continued to practice the same wrongful policies and procedures.

9.      Plaintiff brings this action on behalf of herself and other similarly situated current and former Non-Exempt Workers who elect to opt-in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and other employees similarly situated of their lawfully earned wages.

10.     Plaintiff also brings this action on behalf of herself and all similarly situated current and former Non-Exempt Workers pursuant to Rule 23 of the Federal Rules of Civil Procedure to remedy violations of the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, are Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

### Plaintiff

11.     Plaintiff, Yoojin Chung, is an individual currently residing in Levittown, New York.

12.     Plaintiff has been employed by Defendants from in or around February 2019 to the present as a health aide at Evergreen Centers under New York's Consumer Directed Personal Assistance Program ("CDPAP").

13.     Plaintiff is covered employee within the meaning of the FLSA and the NYLL.

14. A written consent form signed by Plaintiff is being filed with this Class and Collective Action Complaint.

**Defendants**

15. Defendants have employed and/or jointly employed Plaintiff and similarly situated employees at all times relevant.

16. Each Defendant has had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17. Defendants are part of a single integrated enterprise that has jointly employed Plaintiff and similarly situated employees at all times relevant, and Defendants' operations are interrelated and unified.

18. During all relevant times, Evergreen Centers have shared common management and were centrally controlled and/or owned by the Individual Defendants.

19. During all relevant times, Defendants centrally controlled the labor relations of the Evergreen Centers.

20. During all relevant times, Defendants allowed employees to work as part of an interrelated network of home care service provider and transferred and/or shared employees by and between their various corporate entities without restraint.

**Evergreen Homecare Service of NY Inc.** *d/b/a* **SR Homecare of NY**

21. Evergreen is a domestic business corporation organized and existing under the laws of New York.

22. According to the Entity Information provided by the New York State Department of State, Division of Corporations, Evergreen's principal executive office is located at 37-10 149th Place, Flushing, New York 11354.

23.     Evergreen is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

24.     At all relevant times, Evergreen has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

25.     Evergreen has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of minimum wage and overtime compensation.

26.     Upon information and belief, at all relevant times Evergreen's annual gross volume of sales made or business done was not less than $500,000.

**SR Homecare of NY, Inc. *a/k/a* SR Homecare Agency of NY, Inc.**

27.     SR Homecare is a domestic business corporation organized and existing under the laws of New York.

28.     According to the Entity Information provided by the New York State Department of State, Division of Corporations, SR Homecare's principle executive office is located at 37-10 149th Place, Flushing, New York 11354.

29.     SR Homecare is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

30.     At all relevant times, SR Homecare has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

31. SR Homecare has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of minimum wage and overtime compensation.

32. Upon information and belief, at all relevant times SR Homecare's annual gross volume of sales made or business done was not less than $500,000.

**Elim Home Care Agency, LLC**

33. Elim is a domestic limited liability company organized and existing under the laws of New York.

34. According to the Entity Information provided by the New York State Department of State, Division of Corporations, Elim's service of process mailing address is 42-51 160th Street, Flushing, New York 11358.

35. Elim is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff and similarly situated employees.

36. At all relevant times, Elim has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

37. Elim has applied the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of minimum wage and overtime compensation.

38. Upon information and belief, at all relevant times Elim's annual gross volume of sales made or business done was not less than $500,000.

**Hyung Jong Koo *a/k/a* Tommy Koo**

39.     Upon information and belief, Defendant Hyung Jong Koo a/k/a Tommy Koo ("HJ Koo") is a resident of the State of New York.

40.     At all relevant times, HJ Koo is one of the founders, owners, and operators of Evergreen Centers.

41.     At all relevant times, HJ Koo was the president of Evergreen.

42.     At all relevant times, HJ Koo had power over personnel decisions at Evergreen, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

43.     At all relevant times, HJ Koo had power over payroll decisions at Evergreen, including the power to retain time and/or wage records.

44.     At all relevant times, HJ Koo was actively involved in managing the day-to-day operations of Evergreen.

45.     At all relevant times, HJ Koo had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

46.     At all relevant times, HJ Koo had the power to transfer the assets and/or liabilities of Evergreen.

47.     At all relevant times, HJ Koo had the power to declare bankruptcy on behalf of Evergreen.

48.     At all relevant times, HJ Koo had the power to enter into contracts on behalf of Evergreen.

49.     At all relevant times, HJ Koo had the power to close, shut down, and/or sell Evergreen.

50.     HJ Koo was covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, employed and/or jointly employed Plaintiff and similarly situated employees.

**James Koo**

51.     Upon information and belief, Defendant James Koo ("Koo") is a resident of the State of New York.

52.     At all relevant times, Koo is one of the founders, owners, and operators of Evergreen Centers.

53.     At all relevant times, Koo was the president of SR Homecare.

54.     At all relevant times, Koo had power over personnel decisions at SR Homecare, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

55.     At all relevant times, Koo had power over payroll decisions at SR Homecare, including the power to retain time and/or wage records.

56.     At all relevant times, Koo was actively involved in managing the day-to-day operations of SR Homecare.

57.     At all relevant times, Koo had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

58.     At all relevant times, Koo had the power to transfer the assets and/or liabilities of SR Homecare.

59.     At all relevant times, Koo had the power to declare bankruptcy on behalf of SR Homecare.

60.     At all relevant times, Koo had the power to enter into contracts on behalf of SR Homecare.

61.     At all relevant times, Koo had the power to close, shut down, and/or sell SR Homecare.

62.     Koo was covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, employed and/or jointly employed Plaintiff and similarly situated employees.

**Seung Ryun Choi**

63.     Upon information and belief, Defendant Seung Ryun Choi ("Choi") is a resident of the State of New York.

64.     At all relevant times, Choi is one of the shareholders, members, corporate officers, and operators of Evergreen.

65.     At all relevant times, Choi worked as a director at Evergreen.

66.     At all relevant times, Choi had power over personnel decisions at Evergreen, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

67.     At all relevant times, Choi had power over payroll decisions at Evergreen, including the power to retain time and/or wage records.

68.     At all relevant times, Choi was actively involved in managing the day-to-day operations of Evergreen.

69.     At all relevant times, Choi had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

70.     At all relevant times, Choi had the power to transfer the assets and/or liabilities of Evergreen.

71.     At all relevant times, Choi had the power to declare bankruptcy on behalf of Evergreen.

72.     At all relevant times, Choi had the power to enter into contracts on behalf of Evergreen.

73.     At all relevant times, Choi had the power to close, shut down, and/or sell Evergreen.

74.     Choi was covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, employed and/or jointly employed Plaintiff and similarly situated employees.

**Hye Ran Kim**

75.     Upon information and belief, Defendant Hye Ran Kim ("HR Kim") is a resident of the State of New York.

76.     At all relevant times, HR Kim is one of the shareholders, members, corporate officers, and operators of Elim.

77.     At all relevant times, HR Kim worked as a director at Elim.

78.     At all relevant times, HR Kim had power over personnel decisions at Elim, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

79.     At all relevant times, HR Kim had power over payroll decisions at Elim, including the power to retain time and/or wage records.

80.	At all relevant times, HR Kim was actively involved in managing the day-to-day operations of Elim.

81.	At all relevant times, HR Kim had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

82.	At all relevant times, HR Kim had the power to transfer the assets and/or liabilities of Elim.

83.	At all relevant times, HR Kim had the power to declare bankruptcy on behalf of Elim.

84.	At all relevant times, HR Kim had the power to enter into contracts on behalf of Elim.

85.	At all relevant times, HR Kim had the power to close, shut down, and/or sell Elim.

86.	Kim was covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, employed and/or jointly employed Plaintiff and similarly situated employees.

**Mi Jung Kim**

87.	Upon information and belief, Defendant Seung Ryun Choi ("MJ Kim") is a resident of the State of New York.

88.	At all relevant times, MJ Kim is one of the shareholders, members, corporate officers, and operators of SR Homecare.

89.	At all relevant times, MJ Kim worked as a director at SR Homecare.

90.     At all relevant times, MJ Kim had power over personnel decisions at SR Homecare, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

91.     At all relevant times, MJ Kim had power over payroll decisions at SR Homecare, including the power to retain time and/or wage records.

92.     At all relevant times, MJ Kim was actively involved in managing the day-to-day operations of SR Homecare.

93.     At all relevant times, MJ Kim had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

94.     At all relevant times, MJ Kim had the power to transfer the assets and/or liabilities of SR Homecare.

95.     At all relevant times, MJ Kim had the power to declare bankruptcy on behalf of SR Homecare.

96.     At all relevant times, MJ Kim had the power to enter into contracts on behalf of SR Homecare.

97.     At all relevant times, MJ Kim had the power to close, shut down, and/or sell SR Homecare.

98.     MJ Kim was covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, employed and/or jointly employed Plaintiff and similarly situated employees.

## JURISDICTION AND VENUE

99.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

100.	This Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

101.	This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

102.	Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### Evergreen Centers Operate as a Single Enterprise

103.	Each of the entities comprising of Evergreen Centers (Evergreen, SR Homecare, and Elim) has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.  More specifically, each of Evergreen Centers entities provides services and care, as well as medical, health, and nutritional or other goods, to seniors and other adults who need care in exchange for payment from their clients and/or the client's insurance companies, and Evergreen Centers bills their clients' insurance companies to receive payment.

104.	Upon information and belief, each of Evergreen Centers, individually and collectively, have annual gross volume of sales made or business done of at least $500,000.

105.	Each of Evergreen Centers is engaged in the related business of senior and adult home care, primarily directed towards the Korean community in Queens, New York.

106.	And each of Evergreen Centers is operated, owned and/or controlled by the Individual Defendants with the Koos overseeing the entire operation.

107.     Due to legal and tax issues with the ownership and operations of SR Homecare, Defendants have worked to transfer clients from SR Homecare to Evergreen and Elim.

108.     The Koos also centralized accounting operations for Evergreen Centers at the basement of the office located at 37-10 149th Place, Flushing, New York 11354 ("Control Center"), a control center where all Evergreen Centers billing for services provided are funneled through so that staff would collect Aide Time and Activity Reports and supervise payroll for all of Evergreen Centers.

109.     In or about October 2020, the procedure utilized at the Control Center ceased and Evergreen Centers' centralized accounting operations was redirected to an electronic online system.Key employees, such as Choi, HR Kim, and MJ Kim, would also work together with the Koos to coordinate events on behalf of all Evergreen Centers.

110.     For example, upon information and belief, within the last several months, Evergreen Centers has undertaken steps to gather various documents needed to comply with laws and regulations in connection with labor, public health, and insurance among other things; and specifically requesting that employees not date those documents (Evergreen Centers would later date them to stay legally compliant).

111.     Evergreen Centers would also transfer employees or money between their various entities on an as needed basis.  For example, SR Homecare employees would move to Evergreen or Elim at the direction of the Individual Defendants, to avoid paying overtime, and funds will move between entities to cover payroll.

112.     Thus, Evergreen Centers has exhibited a very high degree of interrelatedness, including: unified and/or coordinated operations, such as weekly meetings involving managers/supervisors from all Evergreen Centers' entities and unified billing practices and

electronic system (i.e. Electronic Visit Verification); common management and control of labor relations and other aspects of the business, such as transferring managers and staff, including funds, between and among all the entities and coordinated payroll coverage and supervision, including for purposes to avoid overtime payments; centralized coordination among various Evergreen Centers to prepare and gather documents related to various law and regulation required to operate Evergreen Centers; and common business purposes and interrelated business goals, including telling clients that they should view all Evergreen Centers as one entity and transferring clients between the various entities.

113.    Accordingly, Evergreen Centers has been and continues to operate as a single business enterprise.

**Wage and Hour Violations**

114.    Consistent with Defendants' policies, procedures, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Failure to Pay Minimum Wage**

115.    Defendants have not paid Plaintiff and the Class members the proper minimum wage as required by NY Public Health Law § 3614-c ("NYS Wage Parity Law").

116.    At all relevant times, Plaintiff and the Class members were required to receive compensation not less than that required by the NYS Wage Parity Law, including a base wage of not less than a base wage of $15.00, additional wages of $1.69 and supplemental wages of $2.40, for a total minimum hourly compensation of $19.09.

117.    At all relevant times, Defendants were allowed to pay more than the minimum rates set forth above, but not less than those rates.

118.    For example, during the work weeks of April 14, 2019 to April 27, 2019, Plaintiff's pay stub showed that she worked 88 hours at a regular rate of pay of $17.09 ("Base Rate") but neither received the required $1.69 ("Additional Wage") nor $2.40 ("Supplemental Wage").  According to the NYS Wage Parity Law, Plaintiff should have received the Base Rate, Additional Wage, and Supplemental Wage, totaling not less than $19.09.

119.    However, Plaintiff only received a regular rate of $17.09 and no Additional Wage or Supplemental Wage, and Defendants' NYS Wage Parity Law violations detailed above are evident from the payroll account records in both Plaintiff and Defendants' possession.

120.    Defendants' failure to pay Plaintiff the minimum total compensation required by the NYS Wage Parity Law were willful, and Defendants' unlawful conduct occurred pursuant to a uniform corporate policy, procedure, and practice of minimizing labor costs by denying Plaintiff and the Class members due compensation in violation of the NYS Wage Parity Law.

**Failure to Pay Overtime**

121.    Defendants have not paid Plaintiff and the Class members the proper overtime compensation for all hours worked in excess of 40 hours per week.

122.    For example, during the work weeks of April 14, 2019 to April 27, 2019, Plaintiff's pay stub showed that she worked 88 hours at a regular rate of pay of $17.09 per hour. Accordingly, Plaintiff should have received an overtime payment of $25.64 per hour (1.5 times regular rate of $17.09 per hour).  However, Plaintiff only received an overtime payment of $22.50 per hour, instead of $25.64 per hour.

123.    Moreover, in other work weeks, Plaintiff's hours were split by Defendants between various Evergreen Centers' entities, in order to wrongfully avoid payment of overtime despite Plaintiff working more than 40 hours per week.

124.     At all relevant times, Plaintiff and the Class members were not paid proper overtime rate, and despite pay stubs from Evergreen Centers showing that Plaintiff worked in excess of 40 hours per week, Defendants improperly avoided payment of overtime by splitting the payroll.

125.     Under the applicable NYLL regulations, including 12 N.Y.C.R.R. § 142-2.2, Defendants were required to pay Plaintiff and all Class members at least one and a half times the basic minimum hourly rate for each hour worked in excess of 40 hours workweek.

126.     Plaintiff regularly worked over 40 hours per week.  During such workweeks, Defendants did not compensate Plaintiff and the Class members with an overtime premium of one and a half times their regular hourly rate of pay for all of the overtime hours worked.

127.     The overtime violations detailed above are evident from the payroll account records in both Plaintiff and Defendants' possession.

128.     Defendants' failure to pay the overtime compensation required by FLSA and NYLL was willful, and Defendants' unlawful conduct occurred pursuant to a uniform corporate policy, procedure, and practice of minimizing labor costs by denying Plaintiff and the Class members due compensation in violation of FLSA and NYLL.

**Failure to Pay Wages Promptly**

129.     FLSA requires that wages be promptly paid when due by the regular payday for the pay period covered, so that they not be unreasonably delayed.

130.     NYLL § 191(1)(a)(i) requires that Plaintiff and the Class members be paid weekly and that those wages be paid not later than 7 days after the end of the week in which the wages are earned.

131.     On each payday, Plaintiff and the Class members were provided with paychecks that covered a two-week pay period which was paid three weeks after their wages were earned. Defendants' pattern, policy, and practice was to pay their employees 21 calendar days, or more, was well after seven calendar days after the end of the week in which these wages were earned.

132.     Defendants' failure to promptly pay Plaintiff and the Class members was willful, unreasonable, and upon information and belief was motivated by illegitimate business purposes, including Defendants' desire to hold onto its employees' wages for a longer period of time instead of paying promptly as required under the FLSA and NYLL.

**Wage Theft Prevention Act Violations**

133.     At all relevant times, Defendants failed to provide Plaintiff and the Class members with accurate wage statements, which are required by NYLL, Article 6, § 195.

134.     For example, Plaintiff's wage statements did not accurately reflect the overtime rate or rates of pay or the number of overtime hours worked.  They also did not accurately reflect, among other things, the accurate rates concerning base wage, additional wage, supplemental wage, and total compensation.

135.     Moreover, Defendants altogether stopped issuing all wage statements after January/February of 2020 to Plaintiff and the Class members.

136.     Defendants have failed to furnish Plaintiff and the Class members with a proper or accurate statement with every payment of wages and with an accurate annual wage notice required by NYLL, Article 6, §§ 195(1), 195(3) and the LS 62 notice to wage parity home care aides.

**Failure to Pay Split Shift and Spread of Hours**

137.     Defendants failed to pay Plaintiff and Class members the additional rate for split shift and spread of hours, as required by 12 NYCRR § 142-2.4.

138.     12 NYCRR § 142-2.4 requires Defendants to pay its nonexempt employees who work a shift or split shifts that exceed 10 hours per day a spread of hours payment.  The spread of hours law provides that hourly employees whose workday begins and ends more than 10 hours apart are owed one-hour of pay at the minimum wage rate.

139.     At all relevant times, Defendants have failed to pay Plaintiff and the Class members the required spread of hours pay.

## COLLECTIVE ACTION ALLEGATIONS

140.     Plaintiff brings the First and Second Causes of Action, pursuant to FLSA, on behalf of herself and other similarly situated persons who have worked as Non-Exempt Workers at Evergreen Centers, who elect to opt-in to this action, pursuant to 29 U.S.C. § 216(b) (the "FLSA Collective").

141.     At all relevant times, Plaintiff and the FLSA Collective are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules, including but not limited to:

a.   Willfully failing to pay its employees, including Plaintiff and the FLSA Collective, premium overtime wages for all hours worked in excess of 40 hours per work week;

b.   Willfully failing to pay its employees, including Plaintiff and FLSA Collective, the required minimum wage rate; and

      c.   Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective, have worked for the benefit of Defendants.

142.    Defendants' unlawful conduct, as described in this Class and Collective Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly compensate Plaintiff and the FLSA Collective for the hours they have worked.

143.    Defendants are aware or should have been aware that federal law requires them to pay health and personal care aides an overtime premium for hours worked in excess of 40 hours per workweek.

144.    Plaintiff and the FLSA Collective perform or performed the same primary duties.

145.    Defendants' unlawful conduct has been willful, widespread, repeated, and consistent.

146.    There are many similarly situated current and former Non-Exempt Workers who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join-in.

147.    The members of the FLSA Collective are readily ascertainable, can be located through Defendants' records, and would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join the lawsuit.

148.    Notice should be sent to members of the FLSA Collective pursuant to 29 U.S.C. § 216(b).

149.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

# CLASS ACTION ALLEGATIONS

150.     Plaintiff brings the Third through Eighth Causes of Action pursuant to the New York Labor Law, New York Public Health Law, and under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of person consisting of:

> All persons who work or have worked as Non-Exempt Workers and similar employees at the Evergreen Centers between March 31, 2019 and the date of final judgment in this matter (the "Rule 23 Class").

151.     Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, director, assigns, and successor, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judges(s) to whom this case is assigned, their judicial staffs, and any members of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

152.     The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the size of the Rule 23 Class is at least 1200 individuals.  Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

153.     Defendants have acted or have refused to act on grounds generally applicable to Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

154.     Plaintiff is a member of the Rule 23 Class.  Her claims are typical of the claims of the Rule 23 Class and do not conflict with interests of any other members of the Class.  All members of the Class have been subject to and affected by the same or similar conduct.

155. Plaintiff will fairly and adequately protect the interests of all Class members because it is in her best interest to vigorously prosecute the claims alleged herein and to obtain full compensation due to her for the illegal conduct of which she complains. Plaintiff has retained competent and experienced class action attorneys to represent her interests and those of the Rule 23 Class.

156. Common questions of laws and fact exits as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

    a. Whether Defendants failed to pay the Rule 23 Class all overtime compensation earned, as required by NYLL, Article 19, §§ 650 et seq.;

    b. Whether Defendants failed to pay the Rule 23 Class all minimum wage compensation, as required by NY Public Health Law §3614-c and 12 N.Y.C.R.R § 142-2.2;

    c. Whether Defendants failed to furnish the Rule 23 Class with proper annual wage notices, as required by NYLL, Article 6, § 195(1);

    d. Whether Defendants failed to furnish the Rule 23 Class with proper wage statements with every payment of wages, as required by NYLL, Article 6, § 195(3);

    e. Whether Defendants failed to keep true and accurate time and pay records for all hours worked by the Rule 23 Class, and other records required by the NYLL;

    f. Whether Defendants failed to pay spread of hours, as required by 12 NYCRR § 142-2.4;

g. Whether Defendants failed to pay wages timely and in frequency, as required by NYLL, Article 6, § 191(1)(a);

h. Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law;

i. Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful labor policies; and

j. The nature and extent of class-wide injury and the measure of damages for those injuries.

157. The claims of Plaintiff are typical of the claims of the Rule 23 Class she seeks to represent. Plaintiff and all of the Rule 23 Class members work, or have worked, for Defendants as health and personal care aides at Evergreen Centers. Plaintiff and the Rule 23 Class members enjoy the same statutory rights under the NYLL, including being paid overtime compensation. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and pattern of conduct.

158. Plaintiff will fairly and adequately represent and protect the interests of the members of the Rule 23 Class. Plaintiff understands that as class representative, she assumes a fiduciary responsibility to the class to represent its interests fairly and adequately. Plaintiff recognizes that as class representative, she must represent and consider the interests of the class just as she would represent and consider her own interests. Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over the class. Plaintiff recognizes that any resolution of a class action must be in the

best interest of the class. Plaintiff understands that in order to provide adequate representation, she must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and-or trial. Plaintiff has retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiff and the Rule 23 Class members.

159. In recognition of services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this litigation.

160. A class action is superior to other available methods of the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures. The relative damages suffered by individual Rule 23 Class members are not *de minimis*, but such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' illegal practices.

161. This action is properly maintainable as a class action under Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

162. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

163. Defendants have engaged in a widespread policy, procedure, and practice of violating the FLSA, as detailed in this Complaint.

164.     Plaintiff has consented in writing to be party to this action, pursuant to 29 U.S.C. § 216(b).

165.     At all relevant times, Plaintiff and the FLSA Collective were or have been employees of Defendants within the meaning of 29 U.S.C. §§ 201, *et seq.*

166.     At all relevant times, Defendants have been employers of Plaintiff and the members of the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201, *et seq.*

167.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, and the supporting federal regulations apply to Defendants and protect Plaintiff and the members of the FLSA Collective.

168.     Defendants have failed to pay Plaintiff and the members of the FLSA Collective overtime compensation at a rate of time and one-half their regular hourly wage rate for all hours worked in excess of 40 hours per workweek.

169.     Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the members of the FLSA Collective.

170.     Because Defendants violation of the FLSA has been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

171.     As a result of Defendants' violation of the FLSA, Plaintiff and the members of the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Failure to Pay Wages Timely
### (Brought on behalf of Plaintiff and the FLSA Collective)

172. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

173. The FLSA mandates that wages be promptly paid in full and on time, and payment not be unreasonably delayed.

174. In violation of the FLSA, Evergreen Centers has engaged in a widespread policy, procedure, and practice of failing to promptly pay Plaintiff and the FLSA Collective.

175. Defendants' unlawful conduct has been willful and intentional. Defendants were aware or should have been aware that their practices with respect to the compensation of Plaintiff and the FLSA Collective are unlawful.

176. Because Defendants' violation of the FLSA has been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

177. Defendants have not made a good faith effort to comply with the FLSA's timely payment requirement.

178. As a result of Defendants' unlawful acts, Plaintiff and the member of the FLSA Collective have been deprived of compensation in amounts to be determined at trial and are entitled to recovery of such amounts as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

## THIRD CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (Brought on behalf of Plaintiff and the Members of the Rule 23 Class)

179. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

180. Defendants have engaged in a widespread policy, procedure, and practice of violating the NYLL, as detailed in this Complaint.

181. At all times relevant, Plaintiff and the members of the Rule 23 Class were or have been employees of Defendants, and Defendants have been employers of Plaintiff and the members of the Rule 23 Class within the meaning of the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations.

182. At all times relevant, Plaintiff and the members of the Rule 23 Class have been covered by the NYLL.

183. The overtime wage provisions of Article 19 of the NYLL, and its supporting regulations apply to Defendants, and protect Plaintiff and the members of the Rule 23 Class.

184. Defendants have failed to pay Plaintiff and the members of the Rule 23 Class overtime wages to which they have been entitled under the NYLL and the supporting New York State Department of Labor Regulations.

185. Defendants have failed to pay Plaintiff and the members of the Rule 23 Class overtime at a rate of time and one-half their regular hourly rates for all hours worked in excess of 40 hours per workweek.

186. Defendants have failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and members of the Rule 23 Class.

187. Through their knowing and intentional failure to pay Plaintiff and the members of the Rule 23 Class overtime wages for hours worked in excess of 40 hours per week, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

188. Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, as provided by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interests.

## FOURTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Proper Annual Wage Notices
### (Brought on behalf of Plaintiff and the Members of the Rule 23 Class)

189. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

190. Defendants have willfully failed to furnish Plaintiff and the members of the Rule 23 Class with annual wage notices as required by NYLL, Article 6, § 195(1) and LS 62.

191. The New York's Wage Theft Prevention Act and Wage Parity Law further require Defendants to provide the members of the Rule 23 Class with specifics of the wage supplements, including "each type of … benefits provided" with annual wage notices.

192. Through their knowing or intentional failure to provide Plaintiff and the members of the Rule 23 Class with the annual wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor regulations.

193. Due to Defendants' violations of the NYLL, Article 6, § 195(1), Plaintiff and the members of the Rule 23 Class are entitled to statutory penalties of $50 for each workday that Defendants failed to provide Plaintiff and the members of the Rule 23 Class with proper annual wage notices, or a total of $5,000 each, plus reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided by NYLL, Article 6, § 198(1-b).

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Proper Wage and Benefit Statements
### (Brought on behalf of Plaintiff and the Members of the Rule 23 Class)

194.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

195.     Defendants have willfully failed to furnish Plaintiff and the members of the Rule 23 Class with a statement with every payment of wages, as required by NYLL, Article 6, § 195(3) indicating, among other things, the overtime rate or rate of pay; and the number of regular and overtime hours worked, and work time spent traveling between clients on the same day.

196.     The New York's Wage Theft Prevention Act and Wage Parity Law further require Defendants to provide the members of the Rule 23 Class with specifics of the wage supplements, including "each type of … benefits provided" with every payment of wages.

197.     Through their knowing or intentional failure to provide Plaintiff and the members of the Rule 23 Class with the annual wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

198.     Due to Defendants' violations of the NYLL, Article 6, § 195(3), Plaintiff and the members of the Rule 23 Class are entitled to statutory penalties of $250 for each workday that Defendants failed to provide Plaintiff and the members of the Rule 23 Class with proper wage statements, or a total of $5,000 each, plus reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided by NYLL, Article 6, § 198(1-d).

## SIXTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide "Spread of Hours" and Split-Shift Pay
### (Brought on behalf of Plaintiff and the Members of the Rule 23 Class)

199.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

200.     The Spread of Hours provision of Title 12 NYCRR Part 142, including 12 NYCRR § 142-2.4, applies to Defendants, and Defendants were required to pay an additional hour for any split-shift or day in which the employees' spread of hours exceed 10 hours.  The relevant spread is the interval between the beginning and end of employees' workday, including all working time, plus time-off for meals plus intervals off-duty, as defined by 12 NYCRR § 142-2.18.

201.     Plaintiff and the members of the Rule 23 Class regularly worked more than 10 hours per day, and Defendants have failed to pay Plaintiff and the members of the Rule 23 Class the required Spread of Hours pay.

202.     Through their knowing or intentional failure to provide Plaintiff and the members of the Rule 23 Class the required Spread of Hours and/or split-shift pay, Defendants have willfully violated the New York Labor Law, including NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations.

203.     Defendants failed to keep, make, preserve, maintain, and furnish accurate records, including hours worked each workday and total hours worked each workweek, as required by NYLL, Article 6, § 195(4) and its supporting regulations.

204.     Due to Defendants' willful violations of the NYLL, Article 6, §§ 190 *et seq.*, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their earned spread of hour and/or split-shift wages earned and due, as well as liquidated damages,

reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, as provided by NYLL, Article 6, § 198.

## SEVENTH CAUSE OF ACTION
### New York Labor Law – Violation of Timeliness and Frequency of Pay
**(Brought on behalf of Plaintiff and the Members of the Rule 23 Class)**

205.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

206.    Plaintiff and the members of the Rule 23 Class are manual workers within the meaning of NYLL, Article 6, § 191(1)(a)(i), which require employees to be paid weekly and not later than 7 calendar days after the end of the week in which the wages were earned.

207.    Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor regulations.

208.    Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendant damages for late payments of wages in the amount of liquidated damages equal to 100 percent of all late payments, plus reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, as provided by NYLL, Article 6, § 198.

## EIGHTH CAUSE OF ACTION
### Violation of NYS Wage Parity Law/NYC Living Wage Law
**(Brought on behalf of Plaintiff and the Members of the Rule 23 Class)**

209.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

210.    Upon information and belief, Defendants entered into contract(s) with government agencies that required Defendants to pay Plaintiff and the members of the Rule 23 Class wages of at least the minimum amounts required by NY Public Health Law § 3614-c and/or NYC Admin. Code § 6-109.

211. At all relevant times, Plaintiff and members of Rule 23 Class furnished labor to Defendants in furtherance of Defendants' performance of those contract(s).

212. Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that it paid their Plaintiff and the members of the Rule 23 Class wages as required by NY Public Health Law § 3614-c.

213. Defendants willfully paid Plaintiff and members of the Rule 23 Class less than the rates of wages and benefits to which Plaintiff and the members of the Rule 23 Class were entitled and therefore breached their obligations under the NYS Public Health Law § 3614-c and/or NYC Admin. Code § 6-109 ("Living Wage Law").

214. By failing to pay the required minimum amount of wages and benefits, Defendants failed to pay "wages" owed within the meaning of the New York Labor Law § 190(1).

215. Plaintiff and the members of the Rule 23 Class, as third-party beneficiaries of Defendants' contract(s) with government agencies to pay wages as required by the NYS Wage Parity Law and the Living Wage Law, are entitled to relief for the breach of these contractual obligations, plus interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all similarly situated members of the FLSA Collective who are presently or have at any time during the six years immediately preceding the filing of this lawsuit, up through and including the date of this Court's issuance of

court-supervised notice, worked at Evergreen Centers. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C. Designation of Plaintiff as the Representative of the Rule 23 Class and designation of Plaintiff's counsel as Class Counsel;

D. Awarding unpaid overtime compensation, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

E. Awarding a service award to Plaintiff, in recognition of the services she has rendered and will continue to render to the FLSA Collective and the Rule 23 Class;

F. Declaring that the practices complained of in this Class and Collective Action Complaint are unlawful under the NYLL, Article 6, §§ 190 *et seq.*, NYLL, Article 19, Article6, §§ 650 *et seq.*, and supporting New York State Department of Labor Regulations;

G. Awarding unpaid overtime compensation and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

H. Awarding unpaid total compensation and liquidated damages permitted by law pursuant to NYS Wage Parity Law, Living Wage Law, and their supporting regulations;

I. Awarding statutory penalties of $50 for each workday that Defendants failed to provide Plaintiff and the members of the Rule 23 Class with proper annual wage notices, or a total of $5,000 each, as provided by NYLL, Article 6, § 198;

J.      Awarding statutory penalties of $250 for each workday that Defendants failed to provide Plaintiff and the members of the Rule 23 Class with proper wage statements, or a total of $5,000 each, as provided by NYLL, Article 6, § 198;

K.      Awarding back pay for spread of hours owed to Plaintiff and the members of the Rule 23 Class for split-shift, as provided by 12 NYCRR § 142-2.4;

L.      Awarding statutory damages for late payments of wages in the amount equal to 100 percent of all late payments, as provided by NYLL, Article 6, §§ 191(1)(a)(i) and 198;

M.      Awarding pre-judgement and post-judgment interest;

N.      Enjoining Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

O.      Awarding reasonable attorneys' fees and costs of the action; and

P.      Granting such other relief as this Court shall deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated:  Englewood Cliffs, New Jersey
          September 21, 2021

HUR, LASH & CHOE, LLP


By:   /s/ Robert L. Lash   
          Scott K. Hur
          Robert L. Lash
600 Sylvan Avenue, Suite 109
Englewood Cliffs, NJ 07632
(212) 468-5590
*Attorneys for Plaintiff and the*
*Putative Class*